UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHARIOT CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-cv-04037-SLD-RLH |
| ) | |
| TRAVIS WALKER, CITY OF ) | |
| GALESBURG ON BEHALF OF ) | |
| GALESBURG POLICE DEPARTMENT, ) | |
| OFFICER OLINGER, and OFFICER ) | |
| SWEENEY, ) | |
| ) | |
| Defendants. ) | |

ORDER

The matter comes before the Court for review of Plaintiff Chariot Campbell's Amended Complaint, ECF No. 9,[1] and for ruling on her Motion for Leave to Amend Complaint, ECF No. 12, and Motion for Substituted Service and/or Default Judgment by Plaintiff, ECF No. 14. For the following reasons, the Amended Complaint is DISMISSED, the Motion for Leave to Amend is DENIED, the Motion for Substituted Service and/or Default Judgment is MOOT, and this case is DISMISSED WITH PREJUDICE.

---

[1] Although Plaintiff was directed to file a motion for leave to file an amended complaint, *see* Merit Review Order 5, ECF No. 7, and the Amended Complaint was docketed as a motion, Federal Rule of Civil Procedure 15(a)(1)(A) provides that a plaintiff is entitled to amend her complaint once as a matter of course within 21 days of filing her original complaint and "[a]n amendment authorized by Rule 15(a)(1) must be accepted" by the court. *Martensen v. Chi. Stock Exch.*, 882 F.3d 744, 745 (7th Cir. 2018). Plaintiff's Amended Complaint was filed 18 days after her original Complaint, ECF No. 1, was filed, thereby falling within Rule 15(a)(1)(A)'s 21-day window.

1

## BACKGROUND[2]

Plaintiff has two children, A.W. and A.W. ("the Walker children"), with Defendant Travis Walker. Plaintiff's claims center on the events of February 24, 2021, the day on which Travis lied and "commit[ted] fraud" to obtain a protective order from the state court in Knox County, Illinois. Am. Compl. 3.[3] With the protective order in hand, Travis, along with Defendants Officer Sweeney and Officer Olinger, abducted the Walker children from their grandparents' home. *See id.* at 3 ("[Travis] then utilized [the protective order] to mislead the physical guardians of [the Walker] children and purposefully tricked and physically forced the physical surrender of these children from the location of which they were found, and then did depart with these children . . . ."). The officers conspired with Travis to kidnap the children when they "clearly and obviously agreed to falsely present [the protective order] to the children's grandparents as if the order for protection was a search warrant and also a court order demanding the physical surrender of both of these children unto [Travis]." *Id.* at 4; *see also id.* ("Basically the officers agreed to help [Travis] steal the Plaintiff's minor children."). The officers "falsified" information in their reports written on February 24, 2021, and "lied" to Plaintiff's parents to help Travis take the Walker children. *Id.*

On March 16, 2021, the Department of Children and Family Services ("DCFS") opened a case against Travis regarding the Walker children. Plaintiff was not informed about this case until after the Walker children were removed from Travis's custody and placed in foster care in July 2021. Plaintiff states that "[i]t is unclear" whether the officers were responsible for not

---

[2] When reviewing a complaint filed by a plaintiff proceeding *in forma pauperis* ("IFP") for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), the court applies the same standard as it does for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tate v. SCR Med. Transp.*, 809 F.3d 343, 344–45 (7th Cir. 2015). This means that the court must "accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). The factual background is drawn from the Amended Complaint.
[3] The Court uses the page numbers generated by CM/ECF because the Amended Complaint is not paginated.

informing Plaintiff about Travis's DCFS case and "unclear" whether they "intended for [the Walker] children to be harmed by [Travis]." *Id.* at 5–6. Between mid-March and late July 2021, Travis "subjected the [Walker] children to various forms of abuse and/or neglect." *Id.* at 7.

In June 2021, a Peoria County court deemed Plaintiff to be an unfit parent for the Walker children, and in July 2022, a Knox County court deemed her unfit for her other two biological children with a different father ("the Davis children"). The Knox County court relied on the Peoria County court's ruling when it deemed her unfit in July 2022. *See id.* at 6–7 ("[I]n July of 2022 Knox County and Galesburg DCFS did open up a case against [Plaintiff] finding her unfit in Knox County because she was already unfit in Peoria County, and then both of [the] Davis children were removed from their home."). Both courts' findings of Plaintiff's parental unfitness "all boil[] down to being because the Defendants kidnapped the Walker children in February of 2021." *Id.* Plaintiff's parental fitness was restored in Peoria County in December 2024. She continues to be deemed unfit in Knox County, however, in large part due to Travis's "fraudulent lies and defamation." *Id.* at 7.

Plaintiff alleges that "Defendant[s'] actions have led to prolonged unjust separation between the Plaintiff and her children" and that Defendants have violated her rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.* at 8–10. She further alleges that Defendants violated "Illinois Federal State Law" by committing the crimes of abduction and parental kidnapping. *Id.* at 10. Due to Defendants' "Abduction conspiracy" and her ongoing state and federal court proceedings, Plaintiff lost her Supplemental Nutrition Assistance Program ("SNAP") benefits, has been unable to maintain steady employment, has not been able to pursue her career goals, and has experienced severe emotional and physical distress. *Id.* at 11–12. Plaintiff asserts that her "pain is most relieved by . . . enjoying cannabis," but "[she] is currently

involved in a legal dispute in Knox County regarding her fitness and eligibility to continue enjoying legal cannabis." *Id.* at 12. She requests the following relief and damages: (1) that Travis be fined up to $25,000 and be imprisoned for 1–14 years, and that he pay Plaintiff $10,000 in punitive damages and $100,000 in compensatory damages; (2) that Officer Olinger be fined up to $25,000 and be imprisoned for 1–14 years; and (3) that Officer Sweeney be fined up to $25,000 and be imprisoned for 1–14 years. *Id.* at 12–13.

Plaintiff filed this suit on February 13, 2025. *See generally* Compl., ECF No. 1.[4] Because Plaintiff sought to proceed *in forma pauperis* ("IFP"), the Court conducted a merit review pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed the Complaint in part for failure to state a claim and declined to exercise jurisdiction over the remaining state-law claims. *See generally* Merit Review Order, ECF No. 7. Plaintiff filed her Amended Complaint on March 3, 2025, her Motion for Leave to Amend Complaint on March 26, 2025, and her Motion for Substituted Service and/or Default Judgment on May 11, 2025.

## DISCUSSION

I. **Merit Review of Amended Complaint**

   a. **Legal Standard**

The court must dismiss a complaint brought by an individual proceeding IFP if it determines that the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). Courts apply the Rule 12(b)(6) standard when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). This means that the court must "accept as true all well-pleaded facts in the complaint and

---

[4] The Court uses the page numbers generated by CM/ECF because the Complaint is not paginated.

draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted), and therefore must be "liberally construed" by the court, *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999). But "pro se litigants are not excused from compliance with procedural rules," *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), including "the minimal pleading standard found in Rule 8," *Polzin v. Kelm*, No. 24-cv-325-wmc, 2025 WL 26713, at *2 (W.D. Wis. Jan. 3, 2025); *see, e.g.*, Fed. R. Civ. P. 8(a)(2) (requiring that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief").

    b. Analysis

        i. **City of Galesburg**

Plaintiff purports to bring claims against the City under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Am. Compl. 1–2, 8–9. *Monell* established that municipalities cannot be held vicariously liable for the torts of their employees under § 1983. 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). A municipality can be held liable, though, when it is "directly responsible for the constitutional deprivation." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019) (citing *Monell*, 436 U.S. at 691–94). Under *Monell*, the City can only be held liable "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not

officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). For the limited purpose of evaluating Plaintiff's *Monell* claim, the Court assumes, without deciding, that she has alleged an underlying constitutional deprivation.

Plaintiff does not identify a City official with final policy-making authority, nor does she point to an official policy that has been adopted and promulgated by the City. Accordingly, Plaintiff's claims against the City should be analyzed under the second *Monell* prong, meaning that she must plead facts that support the plausible inference that the municipal government had a widespread practice or custom that deprived her of her constitutional rights. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, . . . a plaintiff pursuing [a *de facto* custom] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.").

Plaintiff does not identify any widespread custom or practice that would justify imposing liability on the City—instead, she only alleges facts related to her personal experiences. But "isolated acts of misconduct will not suffice; a series of violations must be presented" to demonstrate that the City had a widespread practice of violating constitutional rights. *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003); *see also Gill*, 850 F.3d at 344 ("[T]he plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents."). She does not provide examples of other City police officers committing acts similar to those complained of here, nor does she allege that such examples exist. "The specific actions of the [officers] in [Plaintiff]'s case alone, without more,

cannot sustain a *Monell* claim based on the theory of a *de facto* policy." *Gill*, 850 F.3d at 344. Accordingly, Plaintiff's claims against the City of Galesburg are DISMISSED.

### ii. Travis Walker, Officer Sweeney, and Officer Olinger

Plaintiff alleges that Officer Sweeney and Officer Olinger aided Travis in the unlawful abduction of the Walker children in violation of Illinois law. Am. Compl. 2–4 ("Walker was aided and assisted with the Abduction and Kidnapping of the[ Walker] children by two Galesburg Police Officers- Sweeney and Olinger- and these officers were in accomplice to Abduction and Kidnapping violations of 720 ILCS 5/10-5."); *cf. id.* at 1 ("Illinois Federal Court does not typically hold jurisdiction over case conflicts arising over violations of 720 ILCS/ however in certain types of limited situations such as crimes that violate Federal State Law that the Federal Court can exercise jurisdiction at its' [sic] discretion.").[5] The Court previously dismissed Plaintiff's claims against Travis brought under criminal statutes for failure to state a claim. Merit Review Order 2.

Here, Plaintiff's claims of kidnapping against Travis and the officers are largely repetitive of those in her original Complaint and must again be dismissed. Illinois law does not create private rights of action for violations of state criminal law. *See O'Malley v. Adams*, 227 N.E.3d 800, 811 (Ill. App. Ct. 2023), *appeal allowed*, 226 N.E.3d 19 (Ill. 2024); *cf. Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999) ("Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are accordingly poor candidates for the imputation of private rights of action."). The Court must

---

[5] Plaintiff also alleges that the officers' "actions constituted a deprivation of [the Walker children]'s right to liberty without due process of law." Am. Compl. 3. To the extent Plaintiff brings claims on behalf of her children, those claims must be dismissed because a parent may not litigate an action *pro se* on behalf of her child. *See Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("[A] next friend may not, without the assistance of counsel, bring suit on behalf of a minor party.").

7

reiterate: "Plaintiff cannot charge Defendant[s] with any crimes—only the relevant prosecuting authority can do that." Merit Review Order 2; *cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Plaintiff also alleges that the officers and Travis engaged in a conspiracy to unlawfully remove the Walker children from Plaintiff's parents' home. Am. Compl. 3–5. "Illinois recognizes civil conspiracy as a distinct cause of action." *Lewis v. Lead Indus. Assn.*, 178 N.E.3d 1046, 1053 (Ill. 2020) (quotation marks omitted). To state a claim for civil conspiracy under Illinois law, a plaintiff must allege: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). "Civil conspiracy is an intentional tort" which means that the plaintiff must allege that the defendants "knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (quotation marks omitted). "Mere knowledge of the fraudulent or illegal actions of another" does not amount to a conspiracy, nor does "[a]ccidental, inadvertent, or negligent participation in a common scheme." *Id.* Moreover, "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).

In Plaintiff's view, "[i]t is clear that both Officers . . . willfully acted in concert with the Defendant, [Travis] in his criminal Abduction." Am. Compl. 4. She alleges "that the officers

8

knowingly and intentionally falsified the lies and therefore agreed with co-defendant [Travis] that the officers would use such false-pretense in order to fraudulently enforce the physical surrendering of these children unto [Travis]." *Id.* Plaintiff does not provide any specific facts regarding the factual content of the lies allegedly told by Travis to the Knox County court in seeking an order of protection let alone that Officer Olinger and Officer Sweeney were aware of those lies. *Cf. Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (affirming dismissal of conspiracy claim where the plaintiff "summarily allege[d] that the police reports involved false allegations, but never identifie[d] them"). The Amended Complaint "must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Fritz v. Johnston*, 807 N.E.2d 461, 471 (Ill. 2004); *cf. Carranza v. Pool,* 623 F. Supp. 3d 936, 948 (C.D. Ill. 2022) (recognizing that, at the motion-to-dismiss stage, the federal pleading standard parallels the Illinois pleading standard). Plaintiff's conclusory allegations do not plausibly suggest that Defendants conspired against her to wrongfully remove the Walker children from her parents' home and therefore, her civil conspiracy claim must be dismissed.

In the interest of thoroughness, the Court also addresses the Amended Complaint's sweeping claims of constitutional violations to explain why Plaintiff cannot sustain her § 1983 claims against any Defendant. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's § 1983 claims fail because she has not alleged an underlying constitutional violation.

Plaintiff alleges that Defendants violated her Fourth Amendment rights when they "illegally searched Plaintiff's parent's home and unjustifiably siezed [sic] and removed the Plaintiff's Walker children." Am. Compl. 8. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (quoting U.S. Const. amend. IV). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (footnotes omitted). Here, it would be patently unreasonable for Plaintiff to have an expectation of privacy in her parents' home where she was not physically present, meaning that no illegal search occurred. *See Minnesota v. Carter*, 525 U.S. 83, 92 (1998) (Scalia, J., concurring) (recognizing that it would be "absurd" for someone to have a "constitutional right not to have [another citizen's] person unreasonably searched" because "*each* person has the right to be secure against unreasonable searches and seizures in *his own* person, house, papers, and effects").

Moreover, children are not "effects," meaning that Plaintiff cannot state a claim for unlawful seizure based on the removal of the Walker children. *See Feller v. Feller*, No. TDC-18-0108, 2020 WL 1322946, at *4 (D. Md. Mar. 20, 2020) ("Children are not property."). "[T]he right to be free from an unreasonable seizure of their persons belongs to the children themselves, not their parents," which means that "[Plaintiff], who is suing on h[er] own behalf, has no standing to assert any Fourth Amendment claim for an unreasonable seizure that h[er] children may have." *Id.*; *see also Rakas v. Illinois*, 439 U.S. 128, 133 (1978) ("Fourth Amendment rights are personal rights that may not be asserted vicariously.").

10

Next, Plaintiff alleges that the "unjust taking" of the Walker children violated her Fifth Amendment rights, citing to the "Due Process and Takings Clauses." Am. Compl. 8. "The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials." *Craig v. Cohn*, 80 F. Supp. 2d 944, 947 (N.D. Ind. 2000). Plaintiff does not allege any wrongdoing by federal government officials and therefore the Fifth Amendment Due Process Clause does not apply but, as seen below, the Court also considers her allegations in the context of the Fourteenth Amendment Due Process Clause which applies to state actors. In any event, the Takings Clause states that "private property [shall not] be taken for public use, without just compensation," U.S. Const. amend. V, and "a government violates the Takings Clause when it takes property without compensation," *Knick v. Twp. of Scott*, 588 U.S. 180, 202 (2019). The Walker children are not "property" and therefore do not fall within the ambit of the Takings Clause.

Plaintiff further alleges that Defendants violated her Sixth Amendment rights to "be informed of charges, evidence against them, confront witnesses, subpoena witnesses and the right to a speedy trial." Am. Compl. 9. But the plain language of the Sixth Amendment—and its interpretation in caselaw—demonstrates that it only applies in "criminal prosecutions." U.S. Const. amend. VI; *cf. Wolfolk v. Rivera*, 729 F.2d 1114, 1119 (7th Cir. 1984) ("The Sixth Amendment's guarantee of effective assistance of counsel does not apply in civil cases."). Plaintiff has not alleged that she has been prosecuted with a crime and therefore the Sixth Amendment does not apply to the facts of this case.

Plaintiff next alleges that her Eighth Amendment "right to protection against cruel and unusual punishment and government abuse" has been violated by the existence of multiple ongoing juvenile cases in Knox County involving herself and the Davis children. Am. Compl. 9.

But "the Eighth Amendment's prohibition against cruel and unusual punishments" only applies to people who have been "found guilty of a crime." *Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000).  Again, Plaintiff has not alleged she has been charged with or convicted of a crime and therefore the Eighth Amendment does not apply here.

Finally, Plaintiff alleges that her Fourteenth Amendment right "to enjoy the security of protection against impartiality" has been violated by Defendants' "fraudulent pleadings and defamation" against her and the Walker children.  Am. Compl. 9–10.  However, Plaintiff has not alleged any facts showing that she was treated in a biased manner by the officers so it is not apparent how her "security of protection against impartiality" was violated.  And Plaintiff has not alleged any facts demonstrating that she was denied due process as part of the issuance of the protective order that was utilized by Travis and the officers to obtain the Walker children.  For example, Plaintiff does not allege that she did not receive notice of the petition for a protective order, nor does she allege that she was denied the opportunity to be heard before the protective order was issued.

In sum, Plaintiff has failed to allege an underlying constitutional violation and therefore her claims under § 1983 must be dismissed.

### iii. Travis Walker

Plaintiff alleges that Travis committed defamation and fraud to obtain the protective order which he used to kidnap the Walker children.  *See, e.g.*, Am. Compl. 3.  The Court previously dismissed Plaintiff's state tort claims—including defamation, false light invasion of privacy, trespass, negligence, slander, and libel—because she did not plead the parties' citizenships and therefore the Court could not exercise diversity jurisdiction.  Merit Review Order 4–5; Compl. 1–2.  Plaintiff now asserts that complete diversity exists because although

12

"she, her children and [Travis] all reside in" Illinois, "it has been long acknowledged that [Plaintiff] intends to relocate her children and self to Louisiana and that is the place [she] 'intends to remain' once her children are returned to her legal custody." Am. Compl. 5 (quoting *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002)).

Plaintiff's alleged intent to relocate to and remain in Louisiana does not establish diversity jurisdiction. Louisiana will not become Plaintiff's domicile until she moves there. Until then, Plaintiff's domicile remains the last place she had a physical presence with an intent to remain, which appears to be Illinois. *See* Am. Compl. 5; *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Even if Plaintiff had moved to Louisiana after filing this suit, that would be irrelevant for diversity jurisdiction purposes because subject-matter jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 583 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). This means that the court cannot exercise diversity jurisdiction over a suit unless the parties were completely diverse at the time the suit was filed. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 36 n.5 (2025) (recognizing the time-of-filing rule which requires a court to "evaluate[] a party's citizenship . . . at the time a suit is brought, and never again later"). Plaintiff's intent to relocate to and remain in Louisiana in the future does not allow the Court to exercise diversity jurisdiction because the only relevant consideration is where the parties were domiciled as of February 13, 2025, when she filed her Complaint.

The only other basis for the Court to exercise jurisdiction over Plaintiff's state law claims would be supplemental jurisdiction under 28 U.S.C. § 1367, but because the Court "has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over any state law claims.

13

## II. Motion for Leave to Amend Complaint

### a. Legal Standard

When a party seeks to amend a pleading, "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), although "leave to amend is not granted automatically," *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 346 (N.D. Ind. 2010); *see also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) ("The terms of [Rule 15(a)(2)] . . . do not mandate that leave be granted in every case." (quotation marks omitted)). Courts must apply a "liberal standard for amending pleadings . . . to ensure that cases will be decided justly and on their merits." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). In keeping with "the spirit of the Federal Rules," *Foman v. Davis*, 371 U.S. 178, 182 (1962), a plaintiff must "be given every opportunity to cure a formal defect in [her] pleading," *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting 5A *Wright & Miller's Federal Practice & Procedure* § 1357 (2d ed. 1990)).

A court should grant leave to amend "[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion*, 786 F.3d at 519–20 (quotation marks omitted). Reasons that could justify denying leave to amend include undue delay, bad faith or dilatory motive on the part of the plaintiff, repeated failure to cure deficiencies, undue prejudice to the defendants, and futility of the proposed amendments. *Foman*, 371 U.S. at 182. Where the potential basis for denial is futility, courts "apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 328 (7th Cir. 2022) (quotation marks omitted). Denial of a motion to amend is warranted "if the proposed

14

amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Smith v. Lutheran Life Ministries*, No. 21 C 2066, 2023 WL 3602679, at *4 (N.D. Ill. May 23, 2023) (quotation marks omitted).

**b. Analysis**

Plaintiff moves for leave of Court to add more claims against Travis. *See generally* Mot. Am. Compl. 1.[6] Specifically, she alleges that Travis "commit[ted] fraud and cyber crimes in 2024" when he "intentionally and recklessly impersonated" Plaintiff by sending e-mails to caseworkers at DCFS and Lutheran Social Services of Illinois. *Id.* Plaintiff also requests to amend her prayer for relief to add punitive damages—$85,000 from the City; $25,000 from Officer Olinger; $25,000 from Officer Sweeney; and $100,000 from Travis—and requests that Travis "be ordered to serve between 2-14 years in prison for his Parental Kidnapping and Abduction and fraud conspiracies and his crimes." *Id.* at 5. Plaintiff cites to the Illinois Code of Civil Procedure, 735 ILCS 5/2-616, as justification for why she should be granted leave to amend. *Id.* at 4.

Here, the Court finds that Plaintiff's proposed amendments would be futile and therefore denies her motion to amend. Again, the Court emphasizes: <u>Plaintiff cannot bring criminal charges against Defendants and cannot prosecute Defendants for their alleged crimes.</u> "Our entire criminal justice system is premised on the notion that a criminal prosecution pits the government against the governed, not one private citizen against another." *Robertson v. United States ex rel. Watson*, 560 U.S. 272, 278 (2010) (Roberts, C.J., dissenting). Even "a victim of a crime does not have standing to seek the prosecution of the person who committed the offense." *Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *7 (N.D. Ill. June 25, 2009). Because

---

[6] The Court uses the page numbers generated by CM/ECF because Plaintiff's Motion For Leave To Amend Complaint is not paginated.

15

Plaintiff is a private citizen and therefore does not have standing to bring criminal charges, denial of leave to amend to include such claims is warranted.

Moreover, Plaintiff's allegations of constitutional violations are too "entangled with conclusory statements, commentary or vague statements" to state a claim. *Kunferman v. Bd. of Regents of Univ. of Wis. Sys.*, No. 09-cv-662-bbc, 2010 WL 2486351, at *2 (W.D. Wis. June 16, 2010). She continues to put forth "a general 'kitchen sink' approach to pleading the case." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011). For example, she again alleges—in one sentence—numerous constitutional violations by Travis despite the fact that the Court already informed her that he is not a state actor and cannot be held liable under § 1983:

> Ergo, as [Travis] intended, [Plaintiff] was uninformed which rendered her unable to attend [the Walker children's] hearing, which did deprive [Plaintiff]'s 1st, 4th, 5th, 6th, 8th, and 14th Amendment rights to security in one's person, home, papers, and the; [sic] deprived the Plaintiff's rights to Due Process and Takings Clauses; deprived her right to a fair trial, equal justice, speedy trial and created false dark light resulting in undue bias and impartiality in Peoria and Knox County courts regarding [Plaintiff]'s legal fitness, Parental rights, and jeopardizes reunification that [Plaintiff] would otherwise likely be entitled to had it not been for the Defendant Travis Walker's heinous, immoral, and illegal actions in between 2021-25.

Mot. Am. Compl. 2; Merit Review Order 3 ("Any claims arising under the United States Constitution are DISMISSED because Plaintiff does not allege state action."). Plaintiff has "repeatedly failed to follow explicit directions from [this] [C]ourt about how to correct specific problems" in her complaints," *Stanard*, 658 F.3d at 800, and therefore the Court DENIES Plaintiff's motion for leave to amend her complaint.

### III. Motion for Substituted Service and/or Default Judgment

Plaintiff requests that the Court approve an alternative method of service as to Travis and makes cursory references to default judgment and criminal penalties. *See generally* Mot. Sub. Serv. Because the Court is dismissing the Amended Complaint and denying leave to further

16

amend, there is no operative complaint and therefore nothing to serve on Travis or any other Defendant. Accordingly, the Motion for Substituted Service and/or Default Judgment is MOOT.

## CONCLUSION

For the foregoing reasons, Plaintiff Chariot Campbell's Amended Complaint, ECF No. 9, is DISMISSED; Plaintiff's Motion For Leave To Amend Complaint, ECF No. 12, is DENIED; and the Motion for Substituted Service and/or Default Judgment by Plaintiff, ECF No. 14, is MOOT. The Court declines to grant Plaintiff any further opportunities to amend her complaint and dismisses this suit with prejudice. *Cf. Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint.").

The Clerk is directed to update the docket as follows: (1) revise the docket entry text of Plaintiff's Amended Complaint, ECF No. 9, to reflect that is not a motion; (2) terminate Mary Walker as a Defendant as of March 3, 2025; and (3) add the following three Defendants: (a) the City of Galesburg on behalf of Galesburg Police Department, (b) Officer Olinger, and (c) Officer Sweeney.

This suit is DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment and close the case.

Entered this 31st day of July, 2025.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE